453 So.2d 1139 (1984)
James P. CRAWFORD, Appellant,
v.
STATE of Florida, Appellee.
No. 83-1924.
District Court of Appeal of Florida, Second District.
July 6, 1984.
Rehearing Denied August 15, 1984.
*1140 Jerry Hill, Public Defender, Bartow, and Deborah K. Brueckheimer, Asst. Public Defender, Clearwater, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Robert J. Krauss, Asst. Atty. Gen., Tampa, for appellee.
SCHEB, Judge.
Defendant, James Crawford, appeals his conviction for grand theft. We reverse.
The state's information charged Crawford with grand theft in violation of section 812.014, Florida Statutes (Supp. 1982). Crawford pled not guilty.
At jury trial the operative facts established by the state's evidence that on March 13, 1983, Clara Ritter contacted Crawford about fixing the roof on her house in St. Petersburg. Crawford told her the labor and materials to fix her roof would cost $400. Ritter did not have $400 available at home at the time; however, she paid him $240 to enable him to purchase materials. Crawford gave her a receipt for the $240. She signed some form of agreement, but it was not introduced into evidence. She stated that she assumed that Crawford would start the job the next day.
Late the next afternoon Crawford and his helper arrived at the Ritter home with one bucket of tar. When asked about the materials, Crawford said he had to buy them in Tampa, and they had not yet been delivered. Ritter became very upset with *1141 Crawford, fired him, and asked for her money back. Crawford said he would return the money the next evening, but he failed to do so. She subsequently talked with him and he again promised to return the money. When he did not do so, she called the police. After giving conflicting stories to the police, Crawford finally admitted he had not purchased any materials with the money. Rather, he stated to the police officer that he had used the money to buy food for his family.
At the conclusion of the state's evidence, the trial court denied Crawford's motion for a judgment of acquittal. The jury found him guilty, and the trial judge adjudicated him guilty and placed him on five years probation. This appeal ensued.
At the outset, we recognize that the language in section 812.014, the present omnibus theft act, now includes a variety of offenses related to unlawful appropriation of property (e.g., larceny, false pretenses, embezzlement, etc.), so we must consider whether the evidence presented by the state was legally sufficient to establish any of these traditional common law offenses now embraced within the definition of theft. To pursue this we think it helpful to review the principal cases relied on by Crawford and the state.
In Martin v. State, 379 So.2d 179 (Fla. 1st DCA 1980), relied on by Crawford, the First District reviewed a somewhat similar factual scenario. There, defendant Martin agreed to construct a small building for P.M. Brooks, who gave Martin a down payment of $200. The testimony disclosed that the down payment was made to enable Martin to purchase materials. Martin promptly cashed the check, but no materials were ever delivered to the job site and the construction was not started. Martin did not return the down payment. While the written memorandum between Brooks and Martin did not say when the job was to begin, Brooks and his son testified that construction was to start within a day or two after they signed the memorandum contract. The evidence further disclosed that Martin had telephoned Brooks concerning the work to be done, but before Martin started work, Brooks took out a warrant for his arrest. After that Martin made no further effort to perform. A jury found him guilty of grand theft.
On appeal the First District reversed Martin's conviction. It held that even though Martin failed to perform the contract, there was no unlawful "taking" of the money, because Brooks had voluntarily given the money to the defendant. There was no fraud or false representation, the court said, because Martin's promise to do something in the future was not a representation of a past or existing fact. Finally, the court found no basis to support a conviction for conversion or embezzlement, because the money given as a down payment did not retain its character as property belonging to the prosecuting witness after it had been given to Martin.
While acknowledging that Martin is an analogue to this case, the state says it is distinguishable, because it was based on the 1977 theft statute, which subsequently has been amended.[1] Moreover, the state complains that in Martin the court took too narrow a view in construing the language of the theft statute.
The correct interpretation of the present theft statute, the state posits, is exemplified by the Fifth District's recent decision in Brewer v. State, 413 So.2d 1217 (Fla. 5th DCA 1982), petition for review denied, 426 So.2d 25 (Fla. 1983). There, the *1142 court took issue with the Martin decision and emphasized that regardless of how the property is acquired, if the defendant has the requisite criminal intent, he may be found guilty of theft.
We have no quarrel with this statement of law or its applicability to the facts in Brewer. In Brewer Parks' house was burglarized and several rings and guns were stolen. Parks subsequently saw Brewer wearing one of the rings and informed him that the ring had been stolen. He then paid Brewer fifteen dollars for its return. At a later date, Brewer informed Parks that he could purchase Parks' stolen guns for him. At that point Parks gave Brewer a thousand dollars with the understanding that he would travel to Miami, purchase the guns from the individuals who had stolen them, and return in "a day or two." Although Brewer took Parks' money, he never returned with the guns or the money. Parks neither saw nor heard from Brewer until the police arrested him some two and one-half years later. A jury found Brewer guilty of grand theft.
On appeal Brewer argued that Parks gave him money to perform a future service which was not performed. Therefore, he contended the evidence was insufficient to support a conviction of theft. The Fifth District rejected his argument and affirmed his conviction of grand theft.
Brewer appears to be distinguishable on its facts from Martin and the present case. In Brewer the defendant made no effort to perform the undertaking. He took the money and was neither seen nor heard from until he was arrested. Brewer's lack of effort to perform after receiving the money was evidence of the requisite criminal intent. On the other hand, in Martin, where the starting date was not definite and the defendant was making some effort to resolve the problem, there was insufficient evidence to support the finding of a criminal intent.
We find the evidence in this case insufficient to show that Crawford did not intend to perform the contract when he entered into it. Here, Ritter unilaterally terminated the contract after Crawford began to perform. Thus, his retention of the funds she paid did not constitute a taking in the criminal sense, because it did not evince a felonious intent. See Adams v. State, 443 So.2d 1003 (Fla. 2d DCA 1983).
Crawford's showing up with a helper the day after he received a down payment negates the criminal intent of theft by larceny or false pretenses. Although there may be a serious question as to whether his performance was adequate, this appears to be a civil rather than a criminal issue. There was no requirement that he even start performance at the time he arrived with his helper. His allegedly poor performance on that date does not equate with any criminal intent for theft by stealing.
Of course, there is the further question of whether the defendant had the requisite intent to steal Ritter's money either at the time he promised to return it or at the time that he spent it for his family. The state urges that when Crawford failed to return the money after assuring Ritter that he would do so, he exhibited the necessary criminal intent to steal. We disagree, because a mere promise to return money would not be sufficient to establish a criminal intent.
While it is arguable that Crawford had an intent to take Ritter's funds when he spent them on his family, we do not think the $240 retained its character as property belonging to Ritter after Crawford received it as a down payment. See Berney v. State, 38 So.2d 55 (Fla. 1948). Furthermore, the evidence does not prove that Crawford used the down payment money before he was fired. Thus, there is no basis to uphold the conviction of theft on a finding of embezzlement or conversion.
There may be a genuine issue here as to the legal rights of Ritter and Crawford. This is an issue which appropriately could be (and probably should have been) resolved in a dispute resolution proceeding or *1143 in the small claims division of a county court.[2] But we do not think the evidence was legally sufficient to show an intent to steal. We find no merit in defendant's other points on appeal.
Accordingly, we vacate the conviction and sentence and direct that defendant be discharged.
BOARDMAN, A.C.J., and SCHOONOVER, J., concur.
NOTES
[1] § 812.014(1), Fla. Stat. (Supp. 1982) states:

A person is guilty of theft if he knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
(a) Deprive the other person of a right to the property or a benefit therefrom.
(b) Appropriate the property to his own use or to the use of any person not entitled thereto.
Apparently the amendments the state refers to are those which added the words "knowingly" and "either temporarily or permanently." Ch. 78-348, § 1 and Ch. 82-164, § 1, Laws of Fla. See also State v. Dunmann, 427 So.2d 166, 169 (Fla. 1983).
[2] After examining a motion filed by defendant under Florida Rule of Criminal Procedure 3.190(c)(4), one of the judges who presided at the pretrial stage of this case suggested that the controversy here lended itself to a civil rather than a criminal resolution.