453 So.2d 169 (1984)
STATE of Florida, Appellant,
v.
Charles STENZA, Appellee.
No. 83-1821.
District Court of Appeal of Florida, Second District.
July 20, 1984.
*170 Jim Smith, Atty. Gen., Tallahassee, and Gary O. Welch, Asst. Atty. Gen., Tampa, for appellant.
Fred S. Pflaum and Mark Louis Katzman, Sarasota, for appellee.
CAMPBELL, Judge.
Appellant, State of Florida, appeals the trial court's granting of appellee's motion to dismiss filed pursuant to Florida Rule of Criminal Procedure 3.190(c)(4). We affirm.
Appellee was charged by information with grand theft in violation of section 812.014(1), Florida Statutes (1981). The information alleged that appellee, on April 5, 1983, obtained:
[H]ousehold furnishings, including appliances, furniture, pictures, linens, dishes and a television set ... property of the Estate of Elizabeth O'Kelly, ... without the consent of the said owner or custodian and with the intent to deprive said owner or custodian of her rights to the property or benefit therefrom, or with the intent to appropriate the said property to his own use or to the use of another not entitled thereto... .
Appellee is in the business of removing deceased persons from their homes and cleaning the homes. He is also engaged in the related enterprise of liquidation of estates. In this case, appellee was engaged to remove the body and clean the home of Mrs. O'Kelly. He performed those services and also arranged for the removal of Mrs. O'Kelly's home furnishings by Mid-County Auction Service, the sale of such property and payment of the funds received therefrom to Mrs. O'Kelly's heir.
In his affidavit, filed in support of and with his motion to dismiss, appellee stated as follows:
1. That the undersigned Affiant is the same CHARLES STENZA who is charged in case number 83-540F.
2. That pursuant to a contract with Manatee County the undersigned removed the body of one ELIZABETH O'KELLY from her residence located at 5050 5th Street East Bradenton, Florida.
3. At the time of the removal of the body the undersigned had conversations with PEGGY O'KELLY WHALEN and MICHAEL PATRICK O'KELLY who were the only heirs to the estate of ELIZABETH O'KELLY.
4. That the undersigned affiant [sic] received permission from the heirs to clean the residence.
5. That the undersigned honestly believed that at that time he had received permission from the heirs to make arrangements for the auction of all of the remaining estate of ELIZABETH O'KELLY.
6. That the Affiant contacted Mid-County Auction Service with whom Affiant had done business with in the past.
7. That Mid-County Auction came to the residence of ELIZABETH O'KELLY sometime in late March of 1983, and transported all of the estate of ELIZABETH O'KELLY to the Mid-County Auction Service where it was auctioned on April 2, 1983.
8. That a detailed inventory of said property was taken at the time of its removal from the ELEZABETH O'KELLY [sic] residence. (A copy of the Mid-County Auction Service inventory is attached hereto and marked as exhibit A.)

*171 9. That at the time said property was removed from the ELIZABETH O'KELLY estate, the Affiant instructed RICH LITTLE who is the owner of Mid-County Auction Service to cut a check after the property was auctioned to PEGGY O'KELLY WHALEN.
10. That all property removed from the residence of ELIZABETH O'KELLY was sold at the Mid-County Auction Service because the Affiant believed he had the consent of the heirs to auction off the estate.
Appellee also filed in support of his motion, the affidavit of Richard Little, owner of Mid-County Auction Service, who stated as follows:
1. Affiant is the owner of Mid-County Auction Service.
2. That Affiant has in the past done business with one CHARLES STENZA.
3. That the Affiant was contacted by CHARLES STENZA sometime in March of 1983, at which time CHARLES STENZA informed the Affiant that he had permission to dispose of an estate through an auction.
4. That sometime in late March of 1983, the Affiant and his employees went to 5050 5th Street East Bradenton, Florida and removed the contents of said residence to the Mid-County Auction.
5. That at the time said property was removed the undersigned Affiant and his employees took a careful inventory of all the property that was removed.
6. That on April 2, 1983, the contents of the residence at 5050 5th Street East Bradenton, Florida were auctioned.
7. That the attached inventory from Mid-County Auction Service is an accurate reflection of the prices received for the items sold at the auction.
8. That at the time Mid-County Auction Service removed the property from the O'KELLY estate the Affiant was instructed by CHARLES STENZA to cut the check for the sale in the name of PEGGY O'KELLY WHALEN.
9. That a number of weeks later CHARLES STENZA again contacted the Affiant and again instructed the Affiant to cut the check in the name of PEGGY O'KELLY WHALEN.
10. That all the property removed from 5050 5th Street East Bradenton, Florida residence of ELIZABETH O'KELLY was sold at the Mid-County Auction Service.
Appellant, State of Florida, filed a demurrer to appellee's motion to dismiss, which was sworn to by an assistant state attorney, and stated only as follows:
1. That both heirs, Peggy O'Kelly Whalen and Michael Patrick O'Kelly, have signed sworn statements that they had no agreement with Mr. Stenza, and had never authorized Mr. Stenza to remove the items alleged in the information.
The trial court granted appellee's motion to dismiss. The crux of the state's case rests on whether it could prove a felonious intent on the part of appellee. It argued to the trial court only the case of Casso v. State, 182 So.2d 252 (Fla. 2d DCA 1966), and in its brief filed here, only State v. McCray, 387 So.2d 559 (Fla. 2d DCA 1980). Both Casso and McCray stand for the well-accepted principle of law that intent or state of mind is a jury question that, in most instances, cannot be ascertained by direct evidence, but can only be inferred and, therefore, is not proper to be determined on a motion to dismiss. We continue to adhere to that rule of law, but in doing so, observe that for nearly every rule there is an exception. In Casso, the court, while stating that existence of the requisite felonious intent is for a jury to determine, also cautioned that that rule was "subject always to the legal requirement that there must be some substantial competent evidence from which the jury may reasonably infer ... the intent... ." 182 So.2d at 257. In this case, appellant relies upon the fact alleged in its demurrer that appellee had no permission to remove and sell Mrs. O'Kelly's property, to support an inference of his felonious intent to deprive Mrs. O'Kelly's heirs of the property or benefit thereof.
*172 The demurrer does not refute appellee's statement that he believed he had authority to liquidate the estate, nor does it refute the other circumstances alleged in the affidavits which support that apparent mistaken belief. From the unrefuted affidavits, it appears that appellee instructed Mid-County Auction Service to remove the property, sell it, and deliver the proceeds to the heirs. It is not asserted that this was done clandestinely, or in any way to deprive the heirs of the proceeds.
In Jalbert v. State, 95 So.2d 589 (Fla. 1957), in speaking of establishing the intent to commit grand larceny to sustain a breaking and entering charge with intent to commit a felony, the court held, "In the absence of other evidence or circumstances, the best evidence of what he intended to steal is what he did steal." (Emphasis supplied.) There was no evidence or other circumstances presented to the trial judge below to refute that appellee, at all times, had instructed that Mrs. O'Kelly's property be sold and the proceeds delivered to her heirs. Therefore, the evidence before the trial judge shows, by direct evidence, that appellee intended for Mrs. O'Kelly's heirs to benefit from the sale of the property. There is no room, therefore, for an inference that appellee had a felonious intent to deprive them of the property or benefit therefrom.
There has been a significant shift in the courts' statements over the past twenty years or so as to the susceptibility of determining intent in a criminal case on a motion to dismiss. This court in Scott v. State, 137 So.2d 625 (Fla. 2d DCA 1962), citing Jalbert, stated, "Intent, being a state of mind, is not subject to direct proof and can only be inferred from circumstances." (Emphasis supplied.) Edwards v. State, 213 So.2d 274 (Fla. 3d DCA 1968), cited to Scott for the same above quoted statement on intent. However, in Williams v. State, 239 So.2d 127 (Fla. 4th DCA 1970), the court makes a slight change in that statement where, in citing Edwards, they said, "Intent, being a state of mind, must in most cases be inferred from the circumstances." This change was continued in a somewhat different version in State v. West, 262 So.2d 457 (Fla. 4th DCA 1972), when that court said, "Being a state of mind, intent is usually a question of fact to be determined by the trier of fact." (Emphasis supplied.) In State v. J.T.S. and G.R.W., 373 So.2d 418 (Fla. 2d DCA 1979), this court relied on West to hold that intent is not an issue to be decided on a motion to dismiss "since intent is usually inferred from the acts of the parties and the surrounding circumstances." (Emphasis supplied.) In State v. Rogers, 386 So.2d 278 (Fla. 2d DCA 1980), this court made the same statement, relying on J.T.S. and G.R.W. In Adams v. State, 443 So.2d 1003 (Fla. 2d DCA 1983), this court reversed a conviction on a count charging grand theft in a multi-count information. The reversal was based on the insufficiency of the evidence to support the requisite felonious intent to steal. In so reversing, the court relied on Maddox v. State, 38 So.2d 58 (Fla. 1948), where the court quoted from several of its earlier decisions as follows:
In larceny, the criminal intention constitutes the offense, and is the criterion which distinguishes it from trespass. Where the act is done clandestinely, or where there is an effort to conceal the possession of another's property, or prevent the owner from discovering it, there is evidence of felonious intent; but the taking of another's property by mistake or accident, where the animus furandi forms no part is not felony.
... .
The intent to steal is a necessary ingredient of the offense of larceny. The burden rests upon the State to show that the property was taken animo furandi as an essential to conviction. It is appears that the taking was consistent with honest conduct, although the party charged with the crime may have been mistaken, he cannot be convicted of larceny.
38 So.2d at 59.
Finally, this court in Crawford v. State, 453 So.2d 1139 (Fla. 2d DCA 1984), relying partly on Adams, reversed a conviction for *173 grand theft because the evidence was insufficient to evince a felonious intent.
We, therefore, conclude that the unrefuted facts presented in support of appellee's motion to dismiss establish direct evidence that refute any inference of a felonious intent on the part of appellee. Accordingly, the order of the trial court is affirmed.
GRIMES, A.C.J., and SCHEB, J., concur.