603 So.2d 536 (1992)
Louis STRAMAGLIA, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
No. 90-1342.
District Court of Appeal of Florida, Fourth District.
July 8, 1992.
Motion to Correct Opinion Denied; Motions for Rehearing Clarification and Certification Denied September 14, 1992.
John L. Woodard, III, Orlando, Michael Salnick of Salnick & Krischer, West Palm Beach, and Peter D. Aiken, Fort Lauderdale, for appellant/cross-appellee.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Carol Cobourn Asbury, Asst. Atty. Gen., West Palm Beach, for appellee/cross-appellant.
Motion to Correct Opinion Denied; Motions for Rehearing Clarification and Certification Denied September 14, 1992.
STONE, Judge.
We reverse appellant's multiple convictions for grand theft, organized fraud, organized scheme to defraud, and R.I.C.O. activity, totaling 38 counts. We have reviewed the record and conclude that it was error to deny appellant's motion for judgment of acquittal as to each.
All of the charges are founded on allegations that appellant stole labor and/or materials from subcontractors of Vito's Trucking and Excavating Company and, thereby, from CNA Financial Services, a bonding company, in the performance of road construction *537 contracts. The appellant is an officer of Vito's and appeared, by his conduct, to be running the company. The separate counts of theft from CNA arise solely from its disbursement under a payment bond of sums that form the basis of the alleged thefts from the subcontractors. As for the greater counts, the state conceded at trial and in argument before this court that the counts of theft were the predicate acts on which the charges are founded. It is clear that the success or failure of all charges depends upon whether the appellant was guilty of the charges of theft from the subcontractors.
Summarizing the testimony, there is evidence of Vito's failure to pay balances owed to subcontractors despite its collecting draws from the county, Vito's promises to some subcontractors of future payment that were made after those subcontractors had performed, appellant's avoidance of communication with some of the claimants, and statements by appellant to subcontractors that Vito's did not have the funds for payment. Additionally, there was evidence that, in order to obtain draws, the appellant made false statements to the Broward County Expressway Authority (BCEA) that it had previously made the required payments to some subcontractors. There was also collateral evidence of Vito's failure to honor a promise to disburse to CNA its share of a joint check that was deposited in the Vito's account. Appellant was obligated to pay CNA its share of the check, but lied about its not having cleared and instead made other preferential payments from the account. We emphasize, however, that it is undisputed that the charges against appellant in this case did not involve the latter incident or any other claims of CNA other than by virtue of appellant's failure to reimburse the subcontractors, or any direct charges concerning appellant's false representations to the BCEA. We also note that this is not a case involving breach of trust, fiduciary duty or agency. Nor does it involve the fraudulent cashing of two party checks or the misapplication of funds belonging to another.
The state places great weight on the evidence that Stramaglia, in order to obtain draws from the BCEA, made misrepresentations when he signed certifications stating that he had paid several subcontractors their pro rata share of prior draws. However, there is no proof that those misrepresentations involved any inducement of the subcontractors to act or fail to act. The misrepresentations do prove that Stramaglia lied to the BCEA in order to obtain funds from them. However, the state has always conceded that this appeal does not involve a charge against Stramaglia for fraudulently obtaining funds from the BCEA. This case only involves charges against him for stealing from the subcontractors and CNA. The state points to no evidence of any misrepresentation or trickery to induce the subcontractors to enter or continue their contracts with Vito's.
We note that some subcontractors on the job were paid in full by Vito's, and that the total amount of unpaid claims was approximately ten percent of the total contract amounts. Additionally, allegations concerning Stramaglia's total control of Vito's and the illegitimacy or illegal purpose of various corporate disbursements, shown as loan repayments, were essentially speculative.
Alone, the fact that the subcontractors were entitled to be paid and were not paid cannot be determinative of the question of whether their property was criminally taken. See Crawford v. State, 453 So.2d 1139 (Fla. 2d DCA), rev. denied, 459 So.2d 1041 (Fla. 1984); Adams v. State, 443 So.2d 1003, 1007 (Fla. 2d DCA 1983), rev. denied, 449 So.2d 265 (Fla. 1984); Martin v. State, 379 So.2d 179, 181-182 (Fla. 1st DCA 1980); Youngker v. State, 215 So.2d 318 (Fla. 4th DCA 1968). The failure to pay an amount due under a contract, in itself, does not amount to theft under Florida law. Advanced Surgical Technologies, Inc. v. Automated Instruments, Inc., 777 F.2d 1504 (11th Cir.1985); American Int'l Realty, Inc. v. Southeast First Nat'l Bank, 468 So.2d 383 (Fla. 3d DCA 1985). See also Douglas v. Braman Porsche-Audi, Inc., 451 So.2d 1038, 1039 (Fla. 3d DCA 1984); Belford Trucking Co. v. Zagar, 243 So.2d 646, 649 (Fla. 4th DCA 1970). Even *538 though a promise to perform in the future may serve as the basis of a theft, a necessary element of theft under Florida law is that the defendant must have the specific intent to commit the theft at the time of, or prior to, the commission of the act of taking. § 812.014, Fla. Stat. (1990); Adams, 443 So.2d at 1003, 1006; Rosen v. Marlin, 486 So.2d 623, 624 (Fla. 3d DCA 1986), rev. denied, 494 So.2d 1151 (Fla. 1986); Hurd v. State, 440 So.2d 691 (Fla. 1st DCA 1983). See also, Martin, 379 So.2d at 181 (contractor who accepted down payment on a construction job but thereafter made no effort to perform had not committed grand theft). But cf. Brewer v. State, 413 So.2d 1217 (Fla. 5th DCA 1982), review denied, 426 So.2d 25 (Fla. 1983). Broken promises to pay for property are not sufficient to establish criminal intent to steal the property, where such promises occur subsequent to the taking. Adams, 443 So.2d at 1006. Therefore, by itself, the testimony that Stramaglia broke promises to pay the full amount owed subcontractors and avoided them is insufficient proof of Stramaglia's intent to deprive the subcontractors of their property at the time they performed their work. See Adams, 443 So.2d at 1006-1007. Appellee cites no law to the contrary.
Stramaglia's failure to pay the subcontractors resulted in breaches of Vito's contracts with the subcontractors. However, the state failed to prove the element of criminal intent necessary to convict Stramaglia of grand theft. The state did not present any evidence proving that Stramaglia tricked the subcontractors into entering into or performing their contracts with Vito's, nor does the state make such an argument. Therefore, as in the Crawford case, this case involved a civil rather than a criminal issue. See Crawford, 453 So.2d at 1142.
A defendant's conviction cannot be sustained when the only proof of his guilt is circumstantial, unless the evidence is inconsistent with any reasonable hypothesis of innocence. State v. Law, 559 So.2d 187, 188 (Fla. 1989). This is required "no matter how strongly the evidence may suggest guilt." Id. at 188.
Therefore, the judgment and sentences are reversed.
DOWNEY and ANSTEAD, JJ., concur.