GREEN, J.
Appellant, Edward Mosher, was charged and convicted of one count of grand theft after a jury trial. He asserts, on appeal, that the trial court erred when it failed to grant his motion for judgment of acquittal where the state failed to introduce direct or circumstantial evidence that he had the felonious intent to deprive the victim of the victim’s property. We agree and reverse with directions that the appellant be discharged.
Mosher is an automobile/marine mechanic who has a boat repair business in the Florida Keys. The state charged him by information with one count of grand theft of more than $300 in violation of section 812.014(1), Florida Statutes (1997).[1] *121 Specifically, the information alleged that Mosher obtained or endeavored to obtain a powerhead from one of his customer’s boats.
The evidence at trial viewed in a light most favorable to the state,[2] reflects that the victim, Marvin Glade, owned a seventeen foot Sabre outboard motorboat for which he purchased a new 1993 Evinrude powerhead. When the engine overheated and required repair work, he authorized his son, Clifford, to have it repaired at Mosher’s repair shop. Clifford Glade delivered the boat to Mosher’s repair business in December 1997 for the repair work.
Marvin Glade testified that thereafter, he telephoned Mosher oh a monthly basis to inquire as to the status of the repairs and Mosher gave him a different response each time. Approximately nine months after the initial delivery of the boat to Mosher, Marvin Glade demanded that the boat be returned immediately or he would report it stolen. Two to three days later, Mosher returned the boat to Glade minus its powerhead. Without the powerhead, Mr. Glade could not start the boat’s motor. Mr. Glade immediately telephoned Mosher to inquire about the powerhead. Mosher informed Mr. Glade that he had had the powerhead melted down. Mosher then delivered rusted and pitted components to a 1982 powerhead. Upon receipt of these parts, Mr. Glade called the sheriff to report the theft of his powerhead. Detective Mark Terrill of the Monroe County Sheriffs Office was then called to testify that he began a grand theft investigation into the matter. Terrill testified that Mosher had told him that he had received the boat to do repair work and that he had replaced the boat’s 1993 powerhead with a 1982 powerhead.
The state then called George Nasser, a local outboard mechanic with twenty years of experience as its next witness to testily as to the value of Evinrude powerheads. Nasser testified that he inspected Glade’s boat after it was returned to him in October 1998 and noticed that it did not have a powerhead. Several days later, Nasser inspected the box of parts that had been delivered by Mosher and determined that they were not from the 1993 Evinrude powerhead but were components of a 1982 powerhead. Nasser testified that a 1982 powerhead could be used on a 1993 outboard, but that he would not do it without the customer’s knowledge. Nasser also estimated that it should take no longer than a month to replace a powerhead and that ten months was unreasonable. Finally, Nasser testified that the cost for replacing either a 1982 or 1993 powerhead was between $2700 and $3000.
The state then rested its case in chief and the defense moved for a judgment of acquittal arguing that the state had failed to produce sufficient evidence of Mosher’s criminal intent to deprive Glade of his property and that the value of the overheated powerhead in question was more than $300. This motion was denied.
The defense first called Jennifer Brown, who was Mosher’s live-in girlfriend as well as an employee of his boat repair business. Ms. Brown testified that although she normally orders parts for Mosher, she did not order parts for Mr. Glade’s boat. She further testified that at the time that Glade’s boat was at the business, Mosher had one other boat and twenty cars for repairs.
The defense next called Edward Mosh-er, Sr., the appellant’s father. Mr. Mosh-er, Sr. testified that he was familiar with Mr. Glade’s boat and that its motor was “fried”. He also admitted that it would not have taken him ten months to repair Glade’s powerhead.
*122 Next, the defense called George Cay-wood, a mechanic with twenty-two years experience as its expert witness. Cay-wood testified that he could have repaired the engine in two days. He further testified that Mosher had purchased parts for the repair of Glade’s powerhead “but they had sat for a long time, and it turned out that some of the parts were not usable.”
Mosher then took the stand on his own behalf and testified that he received the boat from Glade’s son Clifford in December 1997. He found the 1993 Evinrude motor to be “severely overheated.” Mosh-er testified that he telephoned Clifford to inform him of his findings and of the damage. According to Mosher, Clifford did not want to spend a lot of money for the repair work and agreed to have him rebuild an older powerhead with used parts. Mosher stated that he commenced work on Glade’s boat in April 1998.
According to Mosher, Marvin Glade called to inquire about the status of his repair work some seven months after Mosher took possession of the boat. Mosher testified that the delay was due to his difficulty in securing parts. When Marvin Glade demanded the return of his boat two months later, Mosher testified that he returned the boat within two to three days. Mosher admitted that he did not return the 1993 Evinrude powerhead as he had taken it to a local scrapyard. Mosher admitted that he had never asked Marvin Glade’s permission to dispose of the 1993 Evinrude powerhead at the scrapyard. Mosher finally testified that he sent Glade a disassembled 1982 powerhead when Glade discovered that the boat’s engine was missing its powerhead. The defense thereafter rested its case.
The state then called Marvin Glade as a rebuttal witness. Glade testified, among other things, that Mosher never told him that he was going to repair his boat with a 1982 powerhead. Glade also stated that he would never have given permission to Mosher to do so. The state then rested.
The defense renewed its motion for judgment of acquittal. The motion was denied and the jury returned a verdict of guilty of grand theft. This appeal followed.
Mosher argues that his motion for judgment of acquittal should have been granted where the evidence was legally insufficient to establish that he had felonious intent to commit grand theft of the victim’s powerhead. Alternatively, he argues that his conviction for grand theft must at least be reduced to petit theft where the state failed to adduce any evidence as to the value of the victim’s damaged powerhead at the time it was given to him for repair. We do not address this alternative argument because we agree with Mosher that the evidence at trial was legally insufficient to establish felonious intent to commit the offense of grand theft.
The intent to steal or deprive the victim of the victim’s property is a necessary element of grand theft. It is a well-established principle of law that the issue of felonious intent or state of mind of the defendant is generally a jury question that, in most instances, cannot be ascertained by direct proof, but must be inferred from the surrounding circumstances. See State v. Stenza, 453 So.2d 169, 171 (Fla. 2d DCA 1984); State v. West, 262 So.2d 457, 458 (Fla. 4th DCA 1972); Casso v. State, 182 So.2d 252, 257 (Fla. 2d DCA 1966). This well-established principle, however, is “subject always to the legal requirement that there must be some substantial competent evidence from which the jury may reasonably infer ... the intentf.]” See Casso, 182 So.2d at 257. In this case, the state relied upon the victim’s testimony that he never gave Mosher permission to dispose of the damaged 1993 Evinrude powerhead at the scrapyard as well as the fact that Mosher sought to replace the victim’s powerhead with a disassembled 1982 powerhead.
*123 It was undisputed at the trial, however, that the victim placed his son Clifford in charge of negotiating directly with Mosher for the repair work to be done to the damaged powerhead. Clifford was not called to testify in this trial. Consequently, there was no evidence to rebut Mosh-er’s testimony that he had Clifford’s permission to replace the victim’s burned out powerhead with a cheaper rebuilt power-head made of used parts. Given the record evidence before us, we do not believe, therefore, that there was any room for an inference to be drawn by the jury that Mosher had the felonious intent to deprive the victim of his property or to benefit therefrom. See Stenza, 453 So.2d at 171. The motion for judgment of acquittal should have been granted.
We therefore reverse the appellant’s conviction and sentence and remand with directions that the appellant be discharged.

. That statute reads in pertinent part:
(1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently;
(a) Deprive the other person of a right to the property or a benefit from the property.
*121 (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.
§ 812.014(1), Fla. Stat. (1997).

. See Gordon v. State, 704 So.2d 107, 112 (Fla.1997); Lynch v. State, 293 So.2d 44, 45 (Fla.1974).