852 So.2d 386 (2003)
Oscar Sebastian BENITEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D02-2461.
District Court of Appeal of Florida, Third District.
August 20, 2003.
*387 Bennett H. Brummer, Public Defender, and Robert Kalter, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Linda S. Katz, Assistant Attorney General, for appellee.
Before COPE, FLETCHER and WELLS, JJ.
WELLS, Judge.
Oscar Benitez was convicted of one count of practicing architecture without a license and one count of grand theft. He appeals solely from his conviction for grand theft. We reverse.
Benitez' grand theft conviction arises from a contractual relationship between Benitez and Juan and Lourdes Piloto. Shortly after their marriage, the Pilotos contacted Benitez, one of Mr. Piloto's friends, about doing some renovations to their bedroom and bathroom and for construction of a pool, deck and fence. Benitez, a licensed contractor and architect whose architect's license, unbeknownst to the Pilotos, had lapsed, met with the Pilotos and prepared a proposal for the requested renovations and new construction. Benitez estimated the cost of the requested renovations and new construction as approximately $51,000.
The Pilotos advised Benitez that they intended to pay for the project by refinancing their home and that the most that they could obtain was approximately $37,000. Based on these representations, Benitez reworked the proposal to bring it within the Pilotos' $37,000 budget. On May 12, 1998, the parties executed an agreement pursuant to which Benitez was to perform the work described in his revised proposal for approximately $37,000.[1]
In addition to the $37,000 proposed cost of the project, Benitez charged the Pilotos $3,000 to prepare the necessary blue-prints for the project, blueprints which he signed and sealed as a licensed architect. These plans ultimately were approved by the *388 City of Hialeah which then issued the necessary permits.
In late July of 1998, the Pilotos insisted that demolition work begin even though building permits had not yet been issued. Benitez opened the rear wall of the Pilotos' home and began digging the pool. Thereafter little progress was made on the interior renovations; the pool initially failed inspection; and it soon became apparent that the project could not be completed within the $37,000 budget. Construction stopped.[2] By that time, Benitez had collected approximately $27,000 of the $37,000 contract price.[3]
The Pilotos filed a complaint with the City of Hialeah and brought a civil suit against Benitez which they subsequently dismissed. In June 1999, Benitez was charged with practicing architecture without a license in violation of section 481.223 of the Florida Statutes and with two counts of grand theft. Benitez was found guilty of practicing architecture without a license (which he does not contest here) and of one count of grand theft.[4] He received five years probation with a special condition that he serve four months in county jail and was ordered to pay $15,000 in restitution.
Benitez appeals from his grand theft conviction arguing that the State failed to prove intent. We agree.
Grand theft requires proof of intent to deprive the owner of property of its use or benefit. See § 812.014(1), Fla. Stat. (2002)("[a] person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently" deprive the other person of the benefit from the property or appropriate the property to his or her own use); Adams v. State, 650 So.2d 1039 (Fla. 3d DCA 1995). "Intent, being a state of mind, is often not subject to direct proof and can only be inferred from circumstances." Jones v. State, 192 So.2d 285, 286 (Fla. 3d DCA 1966). At the same time, "in a circumstantial evidence case, the State's evidence must be not only consistent with guilt but inconsistent with any reasonable hypothesis of innocence." Jeffries v. State, 797 So.2d 573, 580 (Fla. 2001); see Benedith v. State, 717 So.2d 472 (Fla.1998); McArthur v. State, 351 So.2d 972, 976 (Fla.1977).
Here the defendant's reasonable hypothesis of innocence was that he never intended to deprive the Pilotos of their money but that he was a legitimate businessman who ran into numerous unforeseen problems with a construction project.
The State points to the defendant's lapsed architect's license as evidence of felonious intent and supports that argument by relying on this court's decisions in Iglesias v. State, 676 So.2d 75, 76 (Fla. 3d DCA 1996), and State v. Summerlot, 711 So.2d 589(Fla. 3d DCA 1998). This reliance is misplaced. In Iglesias, this court concluded that a finding of felonious intent essential to the crime of grand theft was supported by evidence that the defendant secured a contract to perform construction work by falsely informing the victims that he was a licensed and insured contractor when in fact he was not. In Summerlot, we reversed dismissal of a grand theft charge that was predicated on an allegation *389 that the defendant had misrepresented the status of his contractor's license.
In the instant case, the theft alleged was not the result of the defendant's lapsed architect's license. Correctly, Benitez does not question his conviction for practicing architecture without a license. However, there were no problems with the plans that he executed. The plans were approved, and the construction defects that followed had nothing to do with the submission or quality of the plans. Thus, the lapsed architect's license could not demonstrate an intent to deprive the homeowners of their property. And significantly, Benitez had a current general contractor's license. He did not, therefore, misrepresent his qualifications to perform the agreed upon construction work which formed the basis of the theft charge. While the evidence appears quite strong that Benitez performed poorly as a contractor, as to the grand theft charge, there was no evidence of felonious intent as found in Iglesias and Summerlot.
The State also claims that felonious intent was demonstrated by Benitez' agreement to perform the work requested by the Pilotos for $37,000 rather than $51,000 thereby "induc[ing] the victims into a contract and tak[ing] money for a job that could not ... be completed for [the] price." But the State presented no evidence contrary to Benitez' theory that he mistakenly concluded that he could take advantage of his expertise and connections and do the $51,000 job for $37,000. Thus, as the Fourth District concluded in Everett v. State, 831 So.2d 738, 740 (Fla. 4th DCA 2002), "we agree with appellant that the State failed to present competent, substantial evidence of [the crime charged] ... from which the jury could exclude every reasonable hypothesis except that of guilt." See also Stramaglia v. State, 603 So.2d 536, 537-38 (Fla. 4th DCA 1992)("[e]ven though a promise to perform in the future may serve as the basis of a theft, a necessary element of theft under Florida law is that the defendant must have the specific intent to commit the theft at the time of, or prior to, the commission of the act of taking"). While serious questions exist regarding the adequacy of Benitez' performance, that is, whether his work was worth what he had been paid to perform it, there is no question that he performed work mandated by the contract (demolition work was performed and an in-ground swimming pool was installed), behavior that further demonstrates lack of criminal intent. See Crawford v. State, 453 So.2d 1139, 1142 (Fla. 2d DCA 1984)(reasoning that "[defendant's] showing up with a helper the day after he received a down payment negates the criminal intent of theft by larceny or false pretenses" and concluding that defendant's allegedly poor performance did "not equate with any criminal intent for theft by stealing").
In sum, we do not believe that the evidence was legally sufficient to show an intent to steal or that the evidence was inconsistent with Benitez' reasonable hypothesis of innocence. The motion for judgment of acquittal on the theft count should, therefore, have been granted. See De La Cosa v. State, 733 So.2d 592 (Fla. 3 DCA 1999).
Accordingly, we reverse the grand theft conviction and remand to the trial court for re-sentencing.
NOTES
[1] Before contracting with Benitez, the Pilotos contacted Florida International University, which confirmed Benitez had performed work for the university. Mrs. Piloto testified that this fact helped her decide to hire Benitez, concluding "I know I felt comfortable, if he worked for the State everything had to be done."
[2] The Pilotos claim that Benitez abandoned the job; Benitez claims that he was fired.
[3] An expert testified that the value of the work performed by Benitez was approximately $9,000.
[4] A judgment of acquittal was entered by the trial court on one grand theft count.