THOMAS, J.
Appellant challenges his judgment and sentence after being convicted by a jury of grand theft of property from a person 65 years old or older and valued at $300 or more but less than $10,000. Appellant is not challenging his conviction for contracting without a license; his sole contention is that the trial court erred in denying his motion for judgment of acquittal, because the State’s evidence was insufficient to prove that he had the requisite intent to commit grand theft. Viewing the evidence in the light most favorable to the State, we agree with Appellant, and reverse. See Jackson v. State, 18 So.3d 1016, 1025 (Fla.2009) (“If the State presents direct evidence, which the State did here, the trial court’s determination will be affirmed if the record, viewed in the light most favorable to the State, contains competent, substantial evidence supporting each element of the offenses.”).

Facts

Upon discovering they needed a new roof for their home, the homeowners informed their handyman, Tim Keahey, who had performed various jobs around their home. Because Keahey did not believe he could do the job, he approached Appellant. Appellant said he could do the roof work, and Keahey arranged for the homeowners to meet with him and Appellant, and an agreement was negotiated. The wife wrote a check to Appellant in the amount of $6,500 dated February 27, 2010. The wife testified that Keahey assured her and her husband that all necessary permits would be obtained and that Appellant was a licensed contractor.[1] Keahey, on the *308 other hand, testified there was never any discussion about getting a permit or about Appellant being licensed or insured.
Keahey testified that Appellant called him a few days later, explaining that the homeowners’ check would not clear for several days and asked for a loan in order to obtain the necessary materials; Keahey loaned Appellant $1,200, which was repaid soon after the homeowners’ check cleared. Appellant purchased roofing shingles and tar paper and commenced work on the roof. A few days into the job, Appellant noticed that the roof decking needed replacing, and the wife gave Appellant another check, this one for $3,700 dated March 4, 2010, for the extra materials and labor necessary to repair the decking.
An investigator for the Escambia County Building Inspections testified he went to the house in question at lunchtime on March 10, 2010, and did not see anyone on the roof. He saw shingles stacked on the roof and “a few bundles of shingles and then on the ground there was a bunch of shingles.” He asked the homeowners who was working on the roof, and they referred him to Keahey, who in turn referred him to Appellant. Keahey testified that before the investigator questioned him, Appellant told him that an inspector had come by the house and he was going to stop working for a few days. The investigator never met or spoke to Appellant. On determining that no permits had been obtained for the roofing job, the investigator issued a cease-and-desist order.
Appellant never returned to the job, and the homeowners subsequently hired a licensed contractor who testified that the job Appellant performed was substandard, the materials obtained were not the correct materials for the roof at issue, and the entire job had to be redone.
Appellant moved for a judgment of acquittal (JOA) at the conclusion of the State’s evidence, but the court did not allow Appellant to argue his motion until the close of all the evidence. When allowed to argue his motion, Appellant argued:
There’s no establishment of any intent to deprive anyone permanently or temporarily of their money. At best what you have is work that was done unsatisfactorily to the individuals. There’s no intent to deceive or take, nothing on the record for that.
Additionally, nothing that shows that [Appellant] directly led or advertised to the alleged victims in this case that he was a contractor, there’s nothing on the record to support that, no statements of him saying he’s licensed, bonded insured or even a contractor to the alleged victims.
The trial court denied Appellant’s motion, finding “the evidence to be ample and sufficient to warrant resolution by the trier of fact.” We agree with Appellant that the trial court erred in denying his motion for JOA.[2]

Analysis

This court reviews de novo a trial court’s denial of a motion for JOA. Jones v. State, 4 So.3d 687, 688 (Fla. 1st DCA 2009).
Under section 812.014(l)(a)-(b), Florida Statutes:
*309 (1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
(a) Deprive the other person of a right to the property or a benefit from the property.
(b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.
Under section 812.012(3)(a)-(c), Florida Statutes:
(3) ‘Obtains or uses’ means any manner of:
(a) Taking or exercising control over property.
(b) Making any unauthorized use, disposition, or transfer of property.
(c) Obtaining property by fraud, willful misrepresentation of a future act, or false promise.
“Even though a promise to perform in the future may serve as the basis of a theft, a necessary element of theft under Florida law is that the defendant must have the specific intent to commit the theft at the time of, or prior to, the commission of the act of taking.” Stramaglia v. State, 603 So.2d 536, 537-38 (Fla. 4th DCA 1992) (emphasis supplied); see also Yerrick v. State, 979 So.2d 1228, 1230 (Fla. 4th DCA 2008) (holding “Florida law provides that to prove the crime of grand theft, the State must establish the defendant had the requisite criminal intent at the time of the taking.”). Accord, Kay v. State, 48 So.3d 152, 153 (Fla. 1st DCA 2010).
The facts here are analogous with those in Crawford v. State, 453 So.2d 1139, 1140-41 (Fla. 2d DCA 1984):
[The victim] contacted [the appellant] about fixing the roof on her house.... [Appellant] told her the labor and materials to fix her roof would cost $400. [The victim] did not have $400 available at home at the time; however, she paid him $240 to enable him to purchase materials. [Appellant] gave her a receipt for the $240. Late the next afternoon [appellant] and his helper arrived at the [victim’s] home with one bucket of tar. When asked about the materials, [appellant] said he had to buy them in Tampa, and they had not yet been delivered. [The victim] became very upset with [appellant], fired him, and asked for her money back. [Appellant] said he would return the money the next evening, but he failed to do so.
There, the Second District reversed the appellant’s conviction for grand theft:
We find the evidence in this case insufficient to show that [appellant] did not intend to perform the contract when he entered into it....
[Appellant’s] showing up with a helper the day after he received a down payment negates the criminal intent of theft by larceny or false pretenses. Although there may be a serious question as to whether his performance was adequate, this appears to be a civil rather than a criminal issue. There was no requirement that he even start performance at the time he arrived with his helper. His allegedly poor performance on that date does not equate with any criminal intent for theft by stealing.”
Id. at 1142 (emphasis added).
Similarly, in Yerrick, the appellant gave the victim an estimate for repairing a fence. The victim testified that
after receiving a $2,160 check from his insurance company made payable to himself and [appellant’s] company, he endorsed the check over to [appellant]. [The victim] characterized the amount as a ‘deposit’ on the work. [The victim] testified that, about a week later, [appel *310 lant] assured him the fence would be complete when he returned from vacation. [Appellant] did, in fact, remove the old fence.
979 So.2d at 1231. Several months elapsed and the appellant still had not installed the new fence, and although he promised to come back the next day when the victim called to complain, appellant did not return and stopped answering the victim’s calls. Id. The court reversed, agreeing with the appellant’s argument that “such evidence fails to establish he had the requisite criminal intent at the time he accepted” the victim’s money. Id.
Here, the State failed to present any evidence to establish that Appellant possessed the requisite intent to commit grand theft when he accepted the two checks from the homeowners. Indeed, the State’s own witness, Tim Keahey, testified Appellant contacted him a few days after receiving the first check to obtain a loan (which he repaid) so that he could buy materials rather than waiting four or five days for the homeowners’ check to clear the bank. Furthermore, the wife testified that roofing materials were purchased and that work had begun on the roof. The investigator also testified to seeing a large number of shingles on the roof and on the ground around the house. Thus, as in Crawford, “[although there may be a serious question as to whether his performance was adequate, this appears to be a civil rather than a criminal issue.” 453 So.2d at 1142.
Keahey testified that Appellant told him that an inspector had come by, and thus, he was going to stop working for a few days. None of this testimony is consistent with a person who had no intention of doing promised work after receiving payment for such work. The same holds true for the second check. Significantly, the State charged Appellant with grand theft for the period encompassing February 25, 2010 through March 4, 2010 — the dates he was given the two checks; however, the State’s own evidence showed that Appellant used some of these funds to purchase building materials and that he did perform roofing work until the investigator arrived on March 10, 2010 — beyond the latest date that the State alleged Appellant committed grand theft. Likewise, Appellant’s failure to give the homeowners a refund undermined the State’s argument that this failure to refund the money or return after March 10, 2010, was evidence of his intent to commit theft, because such failure occurred well after the time the homeowners gave him their money to fix the roof.
Nor did the State present any evidence that Appellant misrepresented to the homeowners that he was a licensed contractor in an effort to induce them to hire him. Indeed, the wife twice testified that it was Keahey who told her Appellant was licensed and would obtain all necessary permits. Furthermore, Keahey testified that there was never any discussion about getting a permit or whether Appellant was licensed.
In sum, the State’s own witnesses established that Appellant was contacted by Keahey about doing a roofing job, and agreed with the homeowners to do the work for agreed-upon sum. Based on the foregoing, therefore, we find that the trial court should have granted Appellant’s motion for judgment of acquittal.
REVERSED.
PADOVANO and CLARK, JJ„ concur.

. There was no dispute that the homeowners were over age 65. Also, due to health rea *308 sons, the husband did not participate in any of the proceedings below.

. Because we hold that the court should have granted Appellant's motion for JOA based on the State's evidence, we need not discuss Appellant’s testimony, other than to note that his testimony did not provide legally sufficient evidence to sustain the charge of grand theft.