ALTENBERND, Judge.
Dana McGuinness appeals the trial court’s order withholding adjudication after a jury found her guilty of theft, a felony of the third degree.[1] The trial court sentenced Ms. McGuinness to two years’ probation and ordered her to pay $1000 in restitution to the victim. Because the State failed to prove that Ms. McGuinness possessed the intent to commit theft when she accepted payment from the alleged victim to perform a services contract, we reverse and remand for discharge.
Ms. McGuinness has experience obtaining loan modifications. In October 2010, she was employed at an appliance repair store. A coworker approached her seeking help with a loan modification because he and his wife were having difficulty paying their mortgage. Ms. McGuinness orally agreed to help the couple if they paid her $1000. The couple believed that Ms. McGuinness would file the paperwork necessary to modify their loan so that their home would not go into foreclosure.
The couple paid Ms. McGuinness $1000 in three installments. The husband testified that the couple paid Ms. McGuinness $270 cash in mid-October and then issued *176 a check for $230 on approximately October 30, 2010. The couple made a final cash payment of $500, but the State did not prove when that payment was made. After the couple had paid the entire $1000, they unsuccessfully attempted to contact Ms. McGuinness. She did not return then-emails or phone calls. Ms. McGuinness claimed that she had abruptly left Florida and had traveled to New York because of problems she was experiencing in her marriage.
In December 2010, after being unable to reach Ms. McGuinness, the wife contacted Ms. McGuinness’s mother-in-law. The mother-in-law had owned a loan modification business, and Ms. McGuinness had worked for her as an independent contractor. The mother-in-law testified that, at some point, Ms. McGuinness came to her house explaining that the husband and wife were her clients and that they were in trouble; they needed help with a loan modification. The mother-in-law informed Ms. McGuinness that she was not taking clients at that time, and because Ms. McGuinness accepted money from the couple, she needed to work on the file herself. After Ms. McGuinness left for New York, the mother-in-law was also unable to contact Ms. McGuinness. The mother-in-law voluntarily helped the couple complete the paperwork necessary to modify their loan, but she did not file the paperwork on their behalf.
Ultimately, the wife filed the paperwork necessary to modify the loan herself. She admitted, however, that Ms. McGuinness: (1) provided the paperwork to modify the loan; (2) explained what forms she should gather; (3) instructed her on how to fill out certain forms, some of which were ultimately submitted in order to modify the loan; and (4) contacted the mortgage company on the couple’s behalf. Subsequent to the wife’s submission of the proper paperwork, the loan was modified and the home did not go into foreclosure.
Section 812.014, Florida Statutes (2010), defines theft, in pertinent part, as follows:
(1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
(a) Deprive the other person of a right to the property or a benefit from the property.
(b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.
“Even though a promise to perform in the future may serve as the basis of a theft ... the defendant must have the specific intent to commit the theft at the time of, or prior to, the commission of the act of taking.” Frazier v. State, 114 So.3d 461 (Fla. 2d DCA 2013) (emphasis omitted) (quoting Stramaglia v. State, 603 So.2d 536, 537-38 (Fla. 4th DCA 1992)). Here, Ms. McGuinness accepted the money with a promise that she would perform services thereafter.
This case is similar to Crawford v. State, 453 So.2d 1139 (Fla. 2d DCA 1984). In Crawford, the victim hired the defendant to perform a roofing job and paid him $240 to enable him to purchase materials. Id. at 1140. The defendant showed up for work the next day with a helper but with only a bucket of tar and without adequate roofing materials. The defendant told the victim that the materials had not yet been delivered. The victim became upset, fired the defendant, and asked for her money back. Id. at 1140-41. The defendant later admitted to police that he used the deposit to buy food for his family instead of materials. Ultimately, the defendant was convicted of theft. Id. at 1141.
*177 The Crawford court reversed the conviction, finding that showing up with the helper after receiving the down payment “negate[d] the criminal intent of theft.” Id. at 1142. The court found that “[although there may be a serious question as to whether his performance was adequate, this appears to be a civil rather than a criminal issue.” Id. The court further held that the defendant’s “poor performance ... does not equate with any criminal intent for theft by stealing.” Id. See also Segal v. State, 98 So.3d 739 (Fla. 4th DCA 2012) (finding insufficient evidence of intent to commit theft following nonperformance of a construction contract).
The State failed to establish that Ms. McGuinness had an intent to steal from the couple when she agreed to do this work and took their money. The evidence establishes that she partially performed on the contract. She helped collect and prepare paperwork, made contact with the mortgage company on the couple’s behalf, and reached out to her mother-in-law for their benefit. Although she left for New York in the middle of performing this contract, the evidence does not present a jury question that she fled for the purpose of stealing the couple’s money. While the question of the adequacy of Ms. McGuinness’s performance may be at issue, that is an issue for a civil court, not a criminal court. See Crawford, 453 So.2d at 1142.
Reversed and remanded for discharge.
VILLANTI and KHOUZAM, JJ., Concur.

. See § 812.014(2)(c), Fla. Stat. (2010).