# Third District Court of Appeal

## State of Florida

Opinion filed May 8, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-2140
Lower Tribunal No. B22-12921
_____

**Alvaro Juan Silva,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An appeal from the County Court for Miami-Dade County, Betsy Alvarez-Zane, Judge.

Rasco Klock Perez & Nieto, and Joseph P. Klock, Jr., for appellant.

Ashley Moody, Attorney General, and Richard L. Polin, Assistant Attorney General, for appellee.

Before LOGUE, C.J., and MILLER, and LOBREE, JJ.

MILLER, J.

Appellant, Alvaro Juan Silva, appeals from his judgment and sentence for one count of criminal mischief, in violation of section 806.13, Florida Statutes (2022), rendered following a non-jury trial.  The sole issue on appeal is whether the evidence presented below is sufficient to sustain the conviction.  Finding it is, we affirm.

## BACKGROUND

This dispute stems from a so-called "road rage" incident.  Eighty-six-year-old Silva, a local businessman, dropped his wife off at a reputable Coral Gables restaurant.  While searching for parking, he abruptly changed lanes, cutting off Jose Martin, a seventy-year-old physician, in traffic.  Martin pursued Silva.

Silva arrived at his destination and parked on the roadway.  He then obscenely gesticulated at Martin's female passenger.  Martin exited his vehicle, rebuked Silva, and indicated he would defile Silva's mother.

Silva procured a golf club from the trunk of his vehicle and began swinging the club at Martin.  Martin attempted to retreat, but his efforts were stymied by a healing fracture on his lower leg.  Silva continued to swing the club and struck the hood of Martin's car several times, only stopping when he was restrained by bystanders.

Silva was subsequently charged with one count of misdemeanor criminal mischief. The case proceeded to a non-jury trial.[1]

The State presented two eyewitnesses. The first, Martin, testified that Silva "pulled out a golf club and started swinging at me." Silva struck the vehicle because "[h]e [didn't] have good aim." Martin attempted to retreat, and "heard the whizzes," followed by multiple "bang[s]."

The second, Martin's passenger, recounted similar events. When asked whether "Mr. Silva [was] swinging at any particular object," she stated he struck the vehicle when "[h]e was trying to hit [Martin]." She then confirmed that Silva struck the vehicle multiple times.

Silva took the stand in his own defense. He departed from his prior statement to law enforcement, in which he had denied striking the vehicle, and contended that the altercation began because Martin punched him. Silva explained he then ran after Martin, swung the club, and "missed and . . . hit his car." When pressed for further details, he stated: "I swung my club. I did not hit [Martin] but I hit his car."

After taking the matter under advisement, the trial court found Silva guilty, as charged, and imposed sentence. The instant appeal ensued.

---

[1] The court conducted a hybrid proceeding, simultaneously taking evidence on a later rejected Stand Your Ground immunity claim. See § 776.032, Fla. Stat. (2022).

3

## STANDARD OF REVIEW

We review factual findings in a nonjury trial for competent, substantial evidence. See Acoustic Innovations, Inc. v. Schafer, 976 So. 2d 1139, 1143 (Fla. 4th DCA 2008). To the extent that legal error is implicated, however, we conduct a de novo review. See In re Est. of Sterile, 902 So. 2d 915, 922 (Fla. 2d DCA 2005).

## LEGAL ANALYSIS

This appeal centers around the scienter requirement of the offense of criminal mischief. Silva contends the State failed to prove the essential element of intent. Having carefully reviewed the evidence of record, we are not so persuaded.

Under Florida law, "[a] person commits the offense of criminal mischief if he or she willfully and maliciously injures or damages by any means any real or personal property belonging to another, including, but not limited to, the placement of graffiti thereon or other acts of vandalism thereto." § 806.13(1)(a), Fla. Stat. (2022). Criminal mischief is a general intent crime. See M.H. v. State, 936 So. 2d 1, 2 (Fla. 3d DCA 2006); Walker v. State, 154 So. 3d 448, 450 (Fla. 3d DCA 2014). Nonetheless, the State must prove, at a minimum, "[t]he injury or damage was done willfully and maliciously." Fla. Std. Jury Instr. (Crim.) 12.4.

4

The term "willfully" is defined under the Florida Standard Jury Instructions for Criminal Cases as "intentionally, knowingly, and purposely." Id. The word "maliciously," in turn, is defined as "wrongfully, intentionally, without legal justification or excuse, and with the knowledge that injury or damage will or may be caused to another person or the property of another person." Id.

Consistent with the definitional common denominator of intentionality, this court and others have refused to apply the doctrine of transferred intent to satisfy scienter in this context. Instead, the courts of this state have uniformly determined that "an intent to damage the property of another does not arise by operation of law where the defendant's true intention is to cause harm to the person of another." Stinnett v. State, 935 So. 2d 632, 634 (Fla. 2d DCA 2006) (citing In re J.G., 655 So. 2d 1284, 1285 (Fla. 4th DCA 1995)); see also M.H., 936 So. 2d at 4 (reiterating "[t]he intent to damage the property of another does not arise by operation of law where the actor's true intention is to cause harm to the person of another") (quoting In re J.G., 655 So. 2d at 1285) (alteration in original) (internal quotation marks omitted); see also Walker, 154 So. 3d at 450 ("[T]he criminal mischief statute requires that when a defendant acts with malice toward another person, rather than toward property, that malice does not transfer to the property.").

Discerning criminal intent is often fraught with difficulty. In many instances, it "cannot be ascertained by direct proof, but must be inferred from the surrounding circumstances." Mosher v. State, 750 So. 2d 120, 122 (Fla. 3d DCA 2000). Consequently, the state of mind of the defendant is most often relegated to the jury for a conclusive factual determination. See id.

Such factfinding is subject to established guiding principles. For example, intent may be inferred from a volitional act that is substantially certain to result in a particular injury. See State v. Oxx, 417 So. 2d 287, 290–91 (Fla. 5th DCA 1982) ("Proof of an act does raise a presumption that it was knowingly and intentionally done."). Similarly, the Florida Supreme Court has found that intent may be "presumed from the doing of the prohibited act." State v. Medlin, 273 So. 2d 394, 397 (Fla. 1973).

Here, Silva persuasively argues that that he first struck the vehicle while unsuccessfully attempting to hit Martin. Given the collective testimony, we agree that the first blow may well have been purposed to cause bodily injury. But that does not end our analysis.

Silva engaged in multiple volitional acts, striking the vehicle three times. Because the first swing made contact, it was reasonable for the trial court to infer that Silva intended to achieve the same result with each successive swing.

6

Further supporting this inference is the fact that Silva continued to strike the same area of the vehicle even though Martin retreated after the first swing.  Given that intent is rarely susceptible to direct proof and, instead, "almost always shown solely by circumstantial evidence," we conclude the evidence sufficiently constituted competent, substantial evidence of the disputed element, and we affirm in all respects.  Green v. State, 90 So. 3d 835, 837 (Fla. 2d DCA 2012); see also Sebastiano v. State, 14 So. 3d 1160, 1164 (Fla. 4th DCA 2009).

Affirmed.