[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13196
Non-Argument Calendar
_____

D.C. Docket No. 6:10-cv-01104-ACC-KRS

WILLIAM ADAMS,

Plaintiff-Appellee,

versus

CITY OF ORMOND BEACH,
a municipal corporation, et al.,

Defendants,

GREGORY STOKES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 1, 2013)

Before TJOFLAT, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Gregory Stokes, an officer of the Ormond Beach Police Department ("OBPD") in Volusia County, Florida, appeals the district court's ruling denying him summary judgment on qualified-immunity grounds in William Adams's *pro se* civil action brought under 42 U.S.C. § 1983 and state law. For the reasons set forth below, we affirm the district court's denial of Stokes's motion for summary judgment on qualified immunity grounds.

I.

In Adams's verified complaint, he stated that he agreed to remodel the home of Kenneth King, and Adams completed a substantial amount of work on the home. However, Adams stopped working on the home when King refused to pay him for agreed-upon work. Adams stated that, with Stokes's assistance, King filed a complaint against Adams at the OBPD, and King claimed in the complaint that Adams never performed any work on the home, despite King paying Adams $2,500. As a result of King's false complaint, Stokes submitted an affidavit in May 2008 that requested Adams's arrest for grand theft and exploitation of an elderly person, and Adams was arrested. The Florida State Attorney's Office charged Adams with grand theft, but later dismissed the charges. Adams claimed that his constitutional rights were violated by King and Stokes fabricating

2

evidence, and Adams raised a § 1983 conspiracy claim and a malicious-prosecution claim against King and Stokes.

Stokes filed a motion for summary judgment, seeking qualified immunity as to Adams's federal claims, and Stokes argued that he had arguable probable cause to arrest Adams. According to Stokes, he called Adams on the telephone in April 2008 to investigate King's complaint with the OBPD, and Adams stated that he would repay King the money owed in two weeks. In May 2008, King returned to the OBPD and indicated that Adams had not repaid King the money owed. Thus, Stokes completed an affidavit summarizing the contents of his earlier telephone conversation with Adams and recommending that Adams be charged with grand theft and exploitation of the elderly, and Stokes forwarded the affidavit to the State Attorney.

Adams opposed Stokes's summary judgment motion and disputed the contents of the telephone conversation. According to Adams, he had informed Stokes that "work was stopped because King refused to compensate [Adams] for extra completed work." Adams then indicated that he would have to call Stokes back after obtaining Adams's paperwork concerning the matter. Thus, based on the April 2008 telephone conversation, Adams argued that Stokes could not have had arguable probable cause to believe that Adams had committed grand theft or exploitation of the elderly.

3

The district court granted Stokes's motion for summary judgment as to Adams's claims against Stokes in his official capacity, but denied Stokes's motion as to the claims against him in his individual capacity because Adams had demonstrated that his clearly-established constitutional rights were violated. The court found that, based on Adams's version of events, Stokes could not have reasonably believed that Adams committed the relevant offenses because Adams "told Officer Stokes that he performed work at King's property in exchange for the $2,500." Thus, neither actual nor arguable probable cause existed for Adams's arrest, and Stokes was not entitled to qualified immunity.

## II.

On appeal, Stokes argues that the district court's conclusion—that arguable probable cause did not exist for the arrest of Adams—was based on an erroneous factual premise. Specifically, the court found that Adams had informed Stokes that Adams had performed work in exchange for $2,500, but Adams admitted in his deposition that he did not actually perform the contracted-for work. Rather, Adams stated that he simply told Stokes that King owed him money and that Adams would obtain his paperwork before discussing the matter further with Stokes. Next, Stokes argues that, even based on Adams's version of the facts, there was at least arguable probable cause for Stokes to complete the May 2008 affidavit that indicated that Adams should be charged with grand theft and

4

exploitation of the elderly based on the facts that Stokes knew in 2008.  Stokes further argues that Adams's version of events was not corroborated by any other evidence, and thus, Adams's testimony alone should not be the basis for defeating Stokes's qualified-immunity defense.[1]

We review *de novo* the district court's disposition of a summary judgment motion based on qualified immunity, resolving all issues of material fact in favor of the plaintiff and then addressing the legal question of whether the defendant is entitled to qualified immunity under the plaintiff's version of the facts.  *Case v. Eslinger*, 555 F.3d 1317, 1324-25 (11th Cir. 2009).  With the facts so construed, we have the plaintiff's best case before us, and thus, genuine disputes as to material fact are not a factor in our analysis of qualified immunity.  *Id.* at 1325; *see* Fed.R.Civ.P. 56(a).  Generally, a plaintiff's testimony cannot be discounted on summary judgment unless it is "blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature."  *Feliciano*, No. 12-11397, manuscript op. at 3-4, 18-19.

---

[1] Contrary to Adams's argument, we have jurisdiction over this interlocutory appeal because this appeal is based, in part, on a question of law, that is, whether the district court erred in determining that Stokes was not entitled to qualified immunity under a given set of facts.  *See Feliciano v. Acosta*, No. 12-11397, manuscript op. at 12 n.3 (11th Cir. Feb. 5, 2013) (providing that we have jurisdiction where the district court's denial of qualified immunity is based, even in part, on a question of law).  Moreover, in the course of deciding an interlocutory appeal, we may resolve any factual issues that are part of the core legal issues, including whether the district court properly viewed the evidence in the light most favorable to the plaintiff.  *Id.*

When asserting the affirmative defense of qualified immunity, an official must first establish that he was engaged in a discretionary function when he performed the acts at issue in the plaintiff's complaint. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir. 2004). If the official satisfies his burden of proof to show that he was engaged in a discretionary function, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *Id.* at 1264. To do so, the plaintiff must prove that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation. *Id.* If the plaintiff succeeds, the defendant may not obtain summary judgment on qualified-immunity grounds. *Id.*

A plaintiff can show a violation of the Fourth Amendment, made applicable to the states by the Fourteenth Amendment, by showing that he was arrested without probable cause. *Brown v. City of Huntsville*, 608 F.3d 724, 734 n.15 (11th Cir. 2010). Probable cause is defined as facts and circumstances that would lead a prudent man to believe that the suspect had committed or was committing an offense. *Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010). An officer's lack of corroboration through independent police work is noteworthy in the probable cause analysis. *Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004).

To receive qualified immunity, an officer need only have arguable probable cause to arrest, rather than actual probable cause. *Grider*, 618 F.3d at 1257. However, where an officer fabricates false statements to establish probable cause or arguable probable cause, we have held that reasonable officers in the same circumstances and possessing the same knowledge as the defendant officer cannot believe that probable cause existed for the arrest. *See Kingsland*, 382 F.3d at 1233. Similarly, an officer violates the Constitution where he prepares a warrant affidavit that contains omissions made intentionally or with a reckless disregard for the accuracy of the affidavit, where inclusion of the omitted facts would have prevented a finding of probable cause. *See Madiwale v. Savaiko*, 117 F.3d 1321, 1326-27 (11th Cir. 1997). A plaintiff can raise an inference of recklessness by pointing to facts omitted from the affidavit that are clearly critical to a finding of probable cause. *Id.* at 1327.

Under Florida law, a person commits the felony offense of grand theft, *inter alia*, where he knowingly obtains or uses the property of another with the intent to permanently or temporarily deprive the person of a right to the property and causes damage to the property in excess of $300. Fla.Stat. § 812.014(1)-(2). "Obtains or uses" includes obtaining property by fraud, willful misrepresentation of a future act, or a false promise. Fla.Stat. § 812.012(3)(c). Florida case law provides that, to prove grand theft, the state must establish that the defendant had the requisite

7

criminal intent at the time of the taking. *See Stramaglia v. State*, 603 So.2d 536, 537-38 (Fla. Dist. Ct. App. 1992). As Florida case law illustrates, a defendant does not commit grand theft where he intended to perform a contract at the time he entered into the contract. *See, e.g.*, *Crawford v. State*, 453 So.2d 1139, 1140-43 (Fla. Dist. Ct. App. 1984) (providing that the state had not proven intent to commit grand theft because, although a defendant did not return any of a homeowner's down payment on a construction contract, despite not completing any portion of the contract, the defendant intended to perform the contract when he entered into it, as he had purchased some materials and ordered others). The Florida courts have indicated that, actual performance of some portion of the contract, even where minimal, negates an intent not to perform a contract. *Segal v. State*, 98 So.3d 739, 744 (Fla. Dist. Ct. App. 2012). Thus, where the evidence essentially shows a contractual undertaking that the defendant failed to complete, Florida courts treat it as a civil matter, as contractual cases often do not lend themselves to a conclusion that felonious intent is present at the inception of the agreement. *Id.*

The felony offense of exploitation of an elderly person occurs, *inter alia*, where a person who has a business relationship with an elderly person, by deception or intimidation, obtains or uses an elderly person's funds with the intent to temporarily or permanently deprive the elderly person of the use, benefit, or possession of the funds. Fla.Stat. § 825.103(1)-(2). The state must prove that the

8

defendant used deception or intimidation to obtain the elderly person's funds with the intent to deprive the individual of those funds. *See Ellison v. State*, 983 So.2d 1205, 1206 (Fla. Dist. Ct. App. 2008).

Here, the district court misstated the evidence when it stated that Adams told Stokes that Adams "performed the work at King's property in exchange for the $2,500." Rather, in Adams's affidavit that he filed in opposition to Stokes's motion for summary judgment, Adams stated that he told Stokes that Adams stopped working at King's residence "because King refused to compensate [Adams] for extra completed work." However, this statement by Adams did not provide Stokes with arguable probable cause to believe that Adams had committed grand theft or exploitation of the elderly, as no reasonable officer, after hearing Adams's statement could believe that Adams had committed the relevant offenses under Florida law. *See Grider*, 618 F.3d at 1257. Adams's statement showed that he intended to perform the contract at the time he entered into the contract and showed that he did not deceive King at the time Adams obtained King's money. There is no evidence that Stokes asked King about whether King was aware of a dispute about money for additional work outside the scope of the contract. Further, there is no evidence showing that Stokes ever attempted to call Adams back in May 2008 to inquire further into King's complaint, despite Stokes's ability to contact Adams in April 2008. In their answers to Adams's interrogatories, Stokes

9

and King state that Stokes investigated King's complaint by visiting King's home. However, Stokes does not mention this fact in his affidavit filed in support of his summary judgment motion or in the information that he forwarded to the State Attorney's Office.  Further, based on the evidence in this case, it is unclear what Stokes discovered upon visiting King's home and whether his investigation supported King's complaint or Adams's version of the events.

By sending the May 2008 affidavit—that contained false information and omitted other information that appears to have been critical to establishing actual or arguable probable cause and that recommended that Adams be charged with grand theft and exploitation of the elderly—to the State Attorney's Office, Stokes violated Adams's clearly-established Fourth Amendment right to be free from unreasonable seizures, as Adams was arrested on the basis of the information in the affidavit.  *See Brown*, 608 F.3d at 734 n.15; *see also Grider*, 618 F.3d at 1257. Although Stokes argues that Adams's testimony alone should not be sufficient to defeat summary judgment on qualified-immunity grounds, a case should be put to the jury where there is any genuine issue of material fact, even where the issue is created solely by the testimony of the party.  *See Feliciano*, No. 12-11397, manuscript op. at 3-4 (noting the "modern rule" that a case should be put to the jury where there is any genuine issue of material fact, including one created solely by the testimony of a party).  Thus, at this stage in the proceedings, where we must

10

accept Adams's version of events as true, Stokes is not entitled to qualified immunity.

For the foregoing reasons, we affirm the district court's denial of Stokes's motion for summary judgment on qualified immunity grounds.

**AFFIRMED.**