GERBER, J.
The defendant, who used a worthless check to buy music recording equipment from the seller, argues that the trial court erred in denying his motion for judgment *1035 of acquittal on the charges of grand theft of property valued at $100,000 or more and obtaining property in return for a worthless check. On the grand theft charge, the defendant argues the state: (1) failed to prove that he obtained the seller’s equipment with an intent to either permanently or temporarily deprive the seller of the equipment; and (2) failed to rebut his reasonable hypothesis of innocence that his failure to fully pay for the equipment amounted to no more than a civil breach of contract. We disagree with the defendant’s arguments on the grand theft charge and write to discuss our affirmance of that conviction. We affirm without further discussion the defendant’s conviction for obtaining property in return for a worthless check.
At trial, the state presented the following evidence. The seller placed an advertisement to sell various pieces of music recording equipment and the seller’s lease interest in a recording studio which housed the equipment. The defendant responded to the advertisement. The defendant told the seller that he was a record producer who recently moved to the area and was looking for a studio near his home. He said that he already' owned a recording console worth half-a-million dollars and needed to house it in a studio. Based on those representations, the seller developed confidence in the defendant’s ability to purchase the equipment and the lease.
Soon after, the seller and the defendant executed an asset purchase agreement in which the defendant agreed to purchase the seller’s equipment for $125,000. Attached to the agreement was a list of the equipment being purchased and their assigned values. Upon execution of the agreement, the defendant paid a $12,500 deposit to the seller by cashier’s check. The deposit payment allowed the defendant to have unlimited access to the seller’s recording studio and equipment. The defendant was to pay the remaining $112,500 balance to the seller by cashier’s check or other certified check at a scheduled closing, at which time the defendant would take over the seller’s lease of the studio. If the transaction did not close due to the buyer’s action, then the seller would keep the deposit as liquidated damages and not as a penalty.
At the scheduled closing, the defendant gave the seller a personal check for the $112,500 balance. The defendant told the seller that he did not have time to go to the bank to obtain a cashier’s check. The seller took the defendant at his word and accepted the personal check. The seller took the defendant to the studio’s leasing office. The lease was transferred from the seller to the defendant, and the defendant paid two months’ rent totaling $17,000.
The following day, the seller deposited the defendant’s personal check. The seller’s bank returned the check because the defendant’s account contained insufficient funds. The seller contacted the defendant. The defendant said “there was a mess-up at the bank, a wire must have gotten crossed somewhere; there was money that should have been there that wasn’t there.” The seller believed that the defendant’s excuse sounded reasonable. The seller and the defendant agreed to meet for a second closing ten days later.
At the second closing, the defendant arrived three hours late. He gave the seller another personal check for $112,500. He again told the seller that he did not have time to go to the bank to obtain a cashier’s check. He said that the money was in his account. The seller again accepted the defendant’s personal check.
Four days later, the seller deposited the defendant’s personal check. The seller’s bank again returned the check because the defendant’s account contained insufficient *1036 funds. The seller contacted the defendant. The defendant said “there was a wire problem at the bank, a transfer problem.” The defendant also said that he still wanted to make good on the payment.
A few days later, the defendant dropped off a certified $20,000 check at the seller’s business. That check cleared. However, because the defendant did not pay the full amount owed for the equipment, the seller attempted to call the defendant on a number of occasions to no avail.
Three months later, the seller obtained a civil writ of replevin to re-enter the recording studio and recover the equipment. Upon re-entering the recording studio, the seller observed that some of the “high-end” equipment was missing. The missing equipment’s value, as listed in the parties’ asset purchase agreement, was over $33,000.
The seller contacted the defendant about the missing equipment. The defendant told the seller that the equipment was at a repair shop. The defendant gave the seller a telephone number for the repair shop. The seller called the telephone number four different times, but no one answered.
The seller notified the police about the defendant’s non-payment and the missing equipment. The police subpoenaed the defendant’s bank records. The bank records, stipulated into evidence, indicated that, during the three-month period when the defendant gave the seller his personal checks, there were never funds in his account to cover the amount of the checks.
The state charged the defendant with three counts: (1) grand theft of the seller’s equipment, valued at $100,000 or more, at the time the defendant issued the first worthless check; (2) obtaining the seller’s equipment in return for the first worthless check; and (3) obtaining the seller’s equipment in return for the second worthless check.
After the state presented the evidence described above, the defendant moved for a judgment of acquittal on all charges. On the grand theft charge, the defendant argued the state did not present sufficient evidence to prove that he obtained the equipment with the intent to defraud the seller. The defendant further argued that his partial payments negated any possible finding that he intended to defraud the seller. The trial court denied the motion.
On count one, the jury found the defendant guilty of grand theft as charged. On count two, the jury found the defendant guilty of the lesser included offense of attempting to obtain property in return for the first worthless check. On count three, the jury found the defendant guilty as charged of obtaining property in return for the second worthless check.
This appeal followed. The defendant argues that the trial court erred in denying his motion for judgment of acquittal on the charges of grand theft and obtaining property in return for the second worthless check. As stated above, we affirm without further discussion the defendant’s conviction for obtaining property in return for the second worthless check. Also, the defendant does not appeal his conviction of attempting to obtain property in return for the first worthless check.
Thus, we limit our review to the trial court’s denial of the defendant’s motion for judgment of acquittal on the grand theft charge. Our supreme court set forth the appropriate standard of review in Pagan v. State, 830 So.2d 792 (Fla.2002):
In reviewing a motion for judgment of acquittal, a de novo standard of review applies. Generally, an appellate court will not reverse a conviction which is supported by competent, substantial evi *1037 dence. If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction. However, if the State’s evidence is wholly circumstantial, not only must there be sufficient evidence establishing each element of the offense, but the evidence must also exclude the defendant’s reasonable hypothesis of innocence.
Id. at 803 (internal citations omitted).
Because the defendant’s motion for judgment of acquittal focused on the issue of intent, that is, whether he intended to defraud the seller, we conclude that the circumstantial evidence standard applies. See Segal v. State, 98 So.3d 739, 743 (Fla. 4th DCA 2012) (“Intent, being a state of mind, is often not subject to direct proof and can only be inferred from circumstances.”) (citation and quotations omitted).
Applying the circumstantial evidence standard of review, we conclude that the trial court properly denied the defendant’s motion for judgment of acquittal on the grand theft charge. Section 812.014(1), Florida Statutes (2008), defines theft as follows:
A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
(a) Deprive the other person of a right to the property or a benefit from the property.
(b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.
§ 812.014(1), Fla. Stat. (2008) (emphasis added). Section 812.012(3), Florida Statutes (2008), defines “obtains or uses” as including “[ojbtaining property by fraud, willful misrepresentation of a future act, or false promise.” § 812.012(3)(c), Fla. Stat. (2008).
Applying section 812.014(1) here, we conclude that the state introduced competent, substantial evidence to prove that the defendant obtained the seller’s music recording equipment with the intent to permanently deprive the seller of full payment for the equipment. Viewing the evidence in the light most favorable to the state, the defendant obtained the equipment by fraud or willful misrepresentation by providing personal checks which were insufficient to pay the balance owed for the equipment while telling the seller that the money was in his account.
The defendant argues the fact that he made partial payments negates a finding that he obtained the seller’s equipment by fraud, willful misrepresentation of a future act, or false promise. In support, the defendant relies on Segal for the proposition that “evidence of actual performance of some portion of the contract negates an intent not to perform at the inception of the contract.” Segal, 98 So.3d at 744.
However, the defendant’s reliance on Segal is incomplete. We provide more detail on Segal to explain our point.
In Segal, the defendant entered into a contract to construct cabinets for a customer. The customer wrote a check for some of the costs, which the defendant deposited. The defendant came to the customer’s home to measure for the cabinets, purchased materials, and made several rental payments on his work space where he would construct the cabinets. However, the defendant did not install the cabinets at any point. The state charged the defendant with grand theft. At the end of the state’s case at trial, the defendant moved for a judgment of acquittal, arguing that the state failed to prove an *1038 intent to steal or defraud. The trial court denied the motion.
We reversed and directed the trial court to vacate the defendant’s conviction and sentence. After examining similar cases from other districts, we indeed stated that “evidence of actual performance of some portion of the contract negates an intent not to perform at the inception of the contract.” Id. However, our holding was not based solely on the fact that the defendant had actually performed a portion of the contract. Instead, our holding also was based on the fact that “[t]he state presented no evidence of any willful misrepresentations to induce the homeowner to sign the contract.” Id. at 745.
Unlike Segal, the state here presented evidence of willful misrepresentations to induce the seller to close on the transaction. The defendant provided personal checks which were insufficient to pay the balance owed for the equipment while telling the seller that the money was in his account. Thus, sufficient circumstantial evidence of felonious intent existed and the state met its burden of producing evidence inconsistent with the defendant’s theory of innocence. See Iglesias v. State, 676 So.2d 75, 76 (Fla. 3d DCA 1996) (where the defendant intentionally misrepresented that he was a licensed contractor, “[sjuffi-cient circumstantial evidence of felonious intent exists and ... the State met its burden of producing evidence inconsistent with the defendant’s theory of innocence”).
By this opinion, we do not mean to express the view that the state should prosecute as a theft every breach of contract involving the failure to pay money. Instead, we write to express the view that the state should not be precluded from doing so when it can prove circumstantial evidence of felonious intent, as that term is used in section 812.014(1), which is inconsistent with the defendant’s theory of innocence.
Based on the foregoing, we affirm the defendant’s conviction for grand theft of property valued at $100,000 or more, as well as the defendant’s conviction for obtaining property in return for a worthless check.

Affirmed.

WARNER and CIKLIN, JJ„ concur.