DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**WHATDLY PETIT,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D19-3875

[June 30, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael A. Usan, Judge; L.T. Case No. 15-16019CF10A.

Fred Haddad of Fred Haddad, P.A., Fort Lauderdale, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Marc B. Hernandez, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant Whatdly Petit appeals his conviction and life sentence for one count of first degree murder, arising out of the 2015 shooting of a nightclub patron. Appellant raises five issues on appeal, arguing that the trial court either reversibly erred or abused its discretion. Upon consideration of Appellant's arguments, we affirm on all issues. This opinion only addresses Appellant's claims of error in the trial court's denial of his motion to suppress and his motions for judgment of acquittal.

## Background

Appellant was charged by indictment with one count of first degree murder. Before proceeding to trial, Appellant filed a motion to suppress statements which he made to a Broward County Sheriff's Office detective during a recorded interview. Specifically, Appellant sought to suppress statements pertaining to his whereabouts on the night of the incident.

At a hearing on the motion, the trial court played a recording of the interview, which contained the following relevant statements:

| | |
|---|---|
| [THE DETECTIVE]: | And then this other thing is not really a right.  It's just knowing [and] understanding your rights, do you want to speak to me and have a conversation about why you're here? |
| [APPELLANT]: | You said what? |
| [THE DETECTIVE]: | *Knowing and understand[ing] your rights, do you want to talk to me and have a conversation about why you're here, why I got an arrest warrant for you?  Yes?  You gotta say it.* |
| [APPELLANT]: | *Yes.* |

Notably, with respect to the italicized portion of the detective's statement, when the detective asked Appellant if he wanted to have a conversation about why he was there, Appellant can be seen placing his hands together and making a shrug-like gesture with no verbal response. The detective then asked Appellant "Yes?" and stated "You gotta say it[,]" upon which Appellant immediately responded with "Yes."

Based upon this sequence of events, Appellant maintained that he had given an equivocal answer and had not knowingly and intelligently waived his *Miranda*[1] rights.  The State, in turn, asserted that Appellant's hesitation in answering the question was a deliberate pause reflecting on the gravity of the situation.

Ultimately, the trial court denied the motion to suppress.  The trial court considered the entire context of the recording and placed special emphasis on Appellant's invocation of his *Miranda* rights (by requesting an attorney) approximately three-and-a-half minutes after the statement at issue.

The case eventually proceeded to a five-day jury trial.  At trial, the State's primary evidence was surveillance footage from both inside and outside the nightclub.  Although the outside footage—which captured the victim's death—was of poor quality, the State's position was that the perpetrator could be identified through his movements from camera-to-camera.  Thus, through two witness' testimonies identifying Appellant from video shot inside the club, as well as the testimony of a detective

---

[1] *Miranda v. Arizona,* 384 U.S. 436 (1966).

narrating the events of the recorded footage, the State asserted that Appellant was the perpetrator. In addition, the State introduced testimony concerning Appellant's phone records, which placed Appellant in the general vicinity of the nightclub on the night of the incident.

Following the presentation of evidence, Appellant twice moved for acquittal, and the court denied both motions. Thereafter, the jury found Appellant guilty as charged in the Indictment. Appellant then filed a "Renewed Motion for Judgment of Acquittal, Motion for New Trial." At Appellant's sentencing hearing, the trial court denied these motions and sentenced Appellant to life in prison. Appellant timely appealed.

**Analysis**

"The standard of review applicable to a motion to suppress evidence requires that this Court defer to the trial court's factual findings but review legal conclusions de novo." *Backus v. State*, 864 So. 2d 1158, 1159 (Fla. 4th DCA 2003). Additionally, "[t]he standard of review for the denial of a motion for judgment of acquittal is de novo." *Segal v. State*, 98 So. 3d 739, 742 (Fla. 4th DCA 2012) (quoting *Ortiz v. State*, 36 So. 3d 901, 902 (Fla. 4th DCA 2010)).

*A. Motion to Suppress*

For there to be a voluntary waiver of *Miranda* rights, the State must demonstrate: "1) that the waiver was the result of a free choice on the part of the defendant and not the product of intimidation, coercion, or deception; and 2) the waiver was made with a full awareness of the nature of the right being abandoned and the consequences of the abandonment." *Barger v. State*, 923 So. 2d 597, 601 (Fla. 5th DCA 2006) (citing *Moran v. Burbine*, 475 U.S. 412 (1986)). "Only if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that *Miranda* rights have been waived." *Id.* (citing *Globe v. State*, 877 So. 2d 663 (Fla. 2004)). When a defendant is questioned concerning the waiver of *Miranda* rights, if he or she gives an ambiguous or equivocal answer, then a law enforcement officer is "required to inquire further before initiating further questioning." *Madeus v. State*, 244 So. 3d 1095, 1096 (Fla. 4th DCA 2018).

In *Barger*, detectives asked a defendant if he wished to speak to them without a lawyer present. 923 So. 2d at 599. The defendant gave an inaudible answer, whereupon a detective asked him "Is that a no or a yes?" *Id.* The defendant responded with "Yeah, Yeah" and thereafter "made

incriminating statements linking him to the crimes." *Id.* at 599–600. After the defendant was charged, he moved to suppress the statements, arguing that he had made "both verbal and non-verbal negative responses." *Id.* at 600. Specifically, the defendant argued he had responded with "Nah" and "nodded his head negatively from side to side" when the detective "asked him if he was willing to talk without his lawyer being present[.]" *Id.*

At the ensuing motion to suppress hearing, one of the detectives testified that "he interpreted [the defendant's] head shaking as an affirmation of his desire to speak without his lawyer present," noting "that he clarified his question by asking [the defendant] if the gesture was intended to be a yes or no[,]" and that defendant responded with 'Yeah, Yeah.'" *Id.* After viewing a recording of the interaction several times, the trial court found that the defendant said "Yeah" and not "Nah[,]" and that the defendant's "head gestures 'were a continuation of his prior head bobbing, and were not intended by him to be a nonverbal no.'" *Id.* On appeal thereafter, the Fifth District held that the court's finding was "clearly supported by competent and substantial evidence[.]" *Id.* at 601.

Here, like in *Barger,* Appellant gave a non-verbal response when asked if he wanted to speak to the detective about why he was there, and then unequivocally stated "Yes" when the detective followed up on his question. 923 So. 2d at 599. Similarly, also as in *Barger,* the detective in the instant case testified at the suppression hearing that he interpreted Appellant's response as an affirmation that Appellant wanted to talk to him without his lawyer present. *Id.* at 600. Thus, this case presents a nearly identical factual pattern to that of *Barger.*

Nonetheless, despite the factual similarities, Appellant contends that, in the instant case, the detective's statement that "You gotta say it" renders the admission of any statement thereafter inadmissible. We disagree. Once the detective asked Appellant "Yes?" and said "You gotta say it[,]" Appellant immediately responded "Yes." Thus, Appellant responded with an unequivocal affirmation, and the detective was not required to inquire further. *See Madeus,* 244 So. 3d at 1096.

To the extent Appellant's initial hesitation prior to answering "Yes" can be interpreted as equivocal, based upon the totality of the circumstances, it was clear that the detective's statement was not a directive or a coercive statement but was instead a reminder to Appellant that he needed to answer questions with either a "Yes" or "No" response. *See Barger,* 923 So. 2d at 601. Indeed, the recording demonstrates that Appellant was reminded that he needed to do so. Appellant invoked his *Miranda* rights just three-and-a-half minutes after this exchange, demonstrating that he

4

understood his rights.  *See id.*  Consequently, the trial court did not err in denying Appellant's motion to suppress.

### *B. Motions for Judgment of Acquittal*

"Generally, an appellate court will not reverse a conviction which is supported by competent, substantial evidence."  *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002).  "In moving for a judgment of acquittal, a defendant 'admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence.'"  *Beasley v. State*, 774 So. 2d 649, 657 (Fla. 2000) (quoting *Lynch v. State*, 293 So. 2d 44, 45 (Fla. 1974)).  "If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction."  *Pagan*, 830 So. 2d at 803.  This legal standard now applies "in *all* cases where the sufficiency of the evidence is analyzed."  *Bush v. State*, 295 So. 3d 179, 201 (Fla. 2020) (emphasis added).

Here, there was competent substantial evidence to sustain Appellant's conviction.  First, a security officer testified that Appellant was present on the night of the incident, and that he remembered Appellant because of his distinctive footwear (Gucci slides).  Second, the security officer positively identified Appellant on surveillance footage taken from inside the club before the incident.  Third, Appellant's own cousin also identified Appellant from surveillance footage taken inside the club.  Fourth, Appellant's cousin identified the perpetrator's white vehicle as what appeared to be the same vehicle which she had seen Appellant driving the next day at a Thanksgiving family get-together.  And fifth, cell phone records placed Appellant in the vicinity of the Fort Lauderdale nightclub where the murder occurred, rather than at a Pompano Beach nightclub where Appellant indicated he was that night in his post-*Miranda* statements.

Based on this evidence, combined with a complete viewing of the surveillance footage, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt.  *Beasley*, 774 So. 2d at 657.  While the outside surveillance footage was grainy and of poor quality, the individual whom two witnesses identified as Appellant was viewable on surveillance footage for all but a few seconds before the victim was shot.  Accordingly, the trial court did not err in denying Appellant's motions for judgment of acquittal.

### Conclusion

Because it was clear under the totality of the circumstances that the detective's statement that "You gotta say it" was not a directive and that Appellant understood his *Miranda* rights, we hold that the trial court did not abuse its discretion in denying Appellant's motion to suppress. *Barger*, 923 So. 2d at 601. Further, because competent, substantial evidence supported Appellant's conviction, we also hold the trial court did not err in denying Appellant's motions for judgment of acquittal. *See Beasley*, 774 So. 2d at 657. We otherwise affirm on all other issues raised.

*Affirmed.*

LEVINE, C.J., and MAY, J., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**